EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
TED A. GEHRING, CA Bar No. 218715
ted.gehring@ogletree.com
RYAN P. PATTERSON, CA Bar No. 305894
ryan.patterson@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:  213.239.9800
Facsimile:   213.239.9045

Attorneys for Defendants
CHILDTIME CHILDCARE, INC. and LEARNING
CARE GROUP, INC. (incorrectly named as "LEARNING
CARE GROUP")

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN MORGAN; individually, and on behalf of other members of the general public similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>CHILDTIME CHILDCARE, INC., an unknown business entity; LEARNING CARE GROUP, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>  Defendants. | Case No. 18:17-cv-1641<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)**<br><br>*[Filed concurrently with Civil Cover Sheet; Declarations of Carol Switzer and Ted A. Gehring; Notice of Interested Parties; and Corporate Disclosure Statement]*<br><br>Complaint Filed: August 17, 2017<br>Trial Date:       None |

Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

31220658_5.docx

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Childtime Childcare, Inc., and Learning Care Group, Inc. (incorrectly named as "Learning Care Group") (hereinafter collectively, "Defendants"), through their counsel of record, hereby remove the above-captioned action from the Superior Court of the State of California for the County of Orange, to the United States District Court for the Central District of California.

Federal diversity jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 on the grounds that: (1) Plaintiff is a "citizen of a State different from" Defendants; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;" and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100.

## I.   INTRODUCTION

1. On August 17, 2017, Plaintiff filed a Class Action Complaint for Damages ("Complaint") against Defendants in Orange County Superior Court, Case No. 30-2017-00938444-CU-OE-CXC.  (Declaration of Ted A. Gehring in Support of Defendants' Petition and Notice of Removal ("Gehring Decl.") ¶ 3.)

2. On August 21, 2017, Plaintiff served via personal service Defendant Childtime Childcare, Inc.'s, registered agent for service of process, CSC Lawyers, with the following documents: Summons, Complaint, and Civil Case Cover Sheet, true and correct copies of which are attached hereto as Exhibit A. (Declaration of Carol Switzer in Support of Defendants' Petition and Notice of Removal ("Switzer Decl.") ¶ 3.)  A true and correct copy of the Proof of Service of Summons is attached hereto as Exhibit B. (*Id.*)  On August 21, 2017, Plaintiff also served Defendant Learning Care Group, Inc. with the Complaint via personal service.  (*Id.*)

31220658_5.docx

1   Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

3. Plaintiff defines the putative class as "[a]all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Gehring Decl., ¶ 4); Ex. A, Complaint ¶ 14.

4. Plaintiff alleges the following causes of action against Defendants on behalf of herself and on behalf of the class: (1) Unpaid Overtime, (2) Unpaid Meal Period Premiums, (3) Unpaid Rest Period Premiums, (4) Unpaid Minimum Wages, (5) Final Wages Not Timely Paid, (6) Wages Not Timely Paid During Employment, (7) Non-Compliant Wage Statements, (8) Failure to Keep Requisite Payroll Records, (9) Unreimbursed Business Expenses, and (10) Violation of California's Business and Professions Code §§ 17200, et seq. (Gehring Decl., ¶ 5); Ex. A, Complaint.

5. When a plaintiff files suit in state court but could have invoked the original jurisdiction of the federal court, the defendant may remove the action to federal court. 28 U.S.C. § 1441(a).

6. Pursuant to 28 U.S.C. § 1446(d), Defendants will provide prompt written notice of this Notice of Removal to all adverse parties and to the Clerk of the Orange County Superior Court.

## II.   REMOVAL IS PROPER UNDER CAFA

7. Under CAFA, 28 U.S.C. § 1332(d), federal district courts have original jurisdiction over a class action if (1) Plaintiff is a "citizen of a State different from" Defendants; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;" and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100. 28 U.S.C. §§ 1332(d)(2), (d)(5) and (d)(6).

### A.   There Are More Than 100 Class Members in the Proposed Class

8. The putative class consists of more than 100 members. Plaintiff purports to bring this action on behalf of all "[a]ll current or former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of

California at any time during the period from four years preceding the filing of this Complaint to final judgment." Ex. A, Complaint, ¶ 14.

9.  Plaintiff's class definition is ambiguous and overly broad and Defendants reserve the right to challenge the definition on those grounds. However, for purposes of removal, the class definition must be interpreted as broadly as it is alleged on the face of the Complaint. Based on a review of Defendants' business records, the putative class, as defined by Plaintiff's Complaint, includes 1,615 persons. (Switzer Decl., ¶ 7.) Therefore, this action is a class action pursuant to 28 U.S.C. § 1332(d), as it well exceeds the 100 class member threshold.

### B. The Diversity Of Citizenship Requirement Is Satisfied

10. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizenship of at least one putative class member is diverse from the citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). Defendant Childtime Childcare, Inc., is now, and was at the time of the filing of this action, a citizen of Illinois and Michigan within the meaning of 28 U.S.C. § 1332(c)(1). Defendant Learning Care Group, Inc., is now, and was at the time of the filing of this action, a citizen of Michigan within the meaning of 28 U.S.C. § 1332(c)(1). For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

11. The United States Supreme Court, in *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the

corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center." *Id*. at 92-93.

12. At the time of the filing of this action, Defendant Childtime Childcare, Inc., was, and still is, a corporation organized and incorporated under the laws of Illinois and has not been incorporated in any other state. (Switzer Decl., ¶ 4.) Its principal place of business is in Michigan, as it performs the vast majority of its executive and administrative functions at its corporate headquarters at 21333 Haggerty Road, Suite 100, Novi, Michigan 48375. (*Id*.) Its executive officers, including the Chief Executive Officer, Corporate Secretary, Chief Financial Officer, and General Counsel maintain their offices at the headquarters in Michigan. (*Id*.) Accordingly, Defendant Childtime Childcare, Inc., is a citizen of Michigan pursuant to the "nerve center" test, and a citizen of Illinois due to its incorporation in that state.

13. Additionally, at the time of the filing of this action, Defendant Learning Care Group, Inc., was, and still is, a corporation organized and incorporated under the laws of Michigan and has not been incorporated in any other state. (Switzer Decl., ¶ 5.) Its principal place of business is also in Michigan, as it performs the vast majority of its executive and administrative functions at its corporate headquarters at 21333 Haggerty Road, Suite 100, Novi, Michigan 48375. (*Id*.) Its executive officers, including the Chief Executive Officer, Corporate Secretary, Chief Financial Officer, and General Counsel maintain their offices at the headquarters in Michigan. (*Id*.) Accordingly, Defendant Learning Care Group, Inc., is a citizen of the State of Michigan pursuant to the "nerve center" test and due to its incorporation in that state.

14. Plaintiff, a putative class member, is not a citizen of Michigan or Illinois, but rather is a citizen of California. (Ex. A, Complaint, ¶ 5; Switzer Decl., ¶ 6.) The citizenship of "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). Therefore, the requisite minimal diversity exists between the

1  parties.

2  **C.     <u>The Amount In Controversy Exceeds $5,000,000</u>**

3  15.     CAFA provides for original jurisdiction for "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28. U.S.C. § 1332(d)(2).

6  16.     Unlike traditional review of the amount in controversy for claims asserted by individuals, CAFA requires that claims of class members in class actions be aggregated:

> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28. U.S.C. § 1332(d)(6).

13  17.     Defendants deny all of Plaintiff's allegations and specifically deny that Plaintiff or any putative class member is entitled to any relief, whatsoever. But without prejudice to their defense in this action, Defendants aver that the alleged amount in controversy exceeds the $5,000,000 threshold for removal jurisdiction under CAFA, 28. U.S.C. § 1332(d)(2). In determining the amount in controversy to support its Notice of Removal, Defendants calculate the amount in controversy based only on damages and/or penalties sought by Plaintiff as a result of the following six alleged causes of action:  (1) Unpaid Overtime, (2) Unpaid Meal Period Premiums, (3) Unpaid Rest Period Premiums, (5) Final Wages Not Timely Paid, (7) Non-Complaint Wage Statements, and (8) Unreimbursed Business Expenses.  Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5,000,000, Defendants do not include additional analyses of the amounts placed in controversy by Plaintiff's other alleged causes of action in the Complaint, nor attorneys' fees associated with Plaintiff's allegations.  If necessary, Defendants could and would supplement this Notice of Removal to include calculations of the additional amounts in controversy based on the other allegations

1 contained in the Complaint.

        i.    <u>First Cause of Action - Unpaid Overtime.</u>

18. In her first cause of action, Plaintiff alleges that "[d]uring the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." Ex. A, Complaint, ¶ 53. Plaintiff further alleges that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay overtimes wages owed to Plaintiff and the other class members, including failing to properly calculating the overtime rate." Ex. A, Complaint, ¶ 54.

19. Labor Code section 1194(a) provides:

> "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

20. Defendants deny that the putative class members were not paid all overtime wages earned. However, because Plaintiff has alleged that she and other class members worked more than eight hours in a day and more than 40 hours in a week, at a minimum, the court should apply to the amount in controversy requirement a conservative assumption of 1 hour of unpaid overtime wages each workweek that the putative class members worked in California.

21. Based on Defendants' records, the number of putative class members from four years prior to the filing of the Complaint to August 17, 2017, is 1,615. (Switzer Decl., ¶ 7.) The average hourly rate of the putative class members was $12.12 per hour. (*Id.* at ¶ 8.)

/ / /

/ / /

22. Defendants' calculation of Plaintiff's claims for unpaid time-and-a-half overtime wages is **$2,226,577.32** ($18.18 x 1 x 122,474). The computation of the amount in controversy is based on corporate business records that prove the 1,615 putative class members worked 122,474 weeks from August 17, 2013, to August 17, 2017, that each putative class member earned an average regular rate of $12.12 per hour, and the assumption that each putative class member incurred one hour of unpaid overtime for every workweek. (Switzer Decl., ¶¶ 7-8.)

23. An assumption of one hour of unpaid overtime for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). This is especially the case where, as here, the plaintiff fails to provide specific allegations concerning the frequency of which he worked overtime without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

    ii. <u>Second Cause of Action – Unpaid Meal Period Premiums</u>

24. In her Second Cause of Action, Plaintiff seeks to recover on behalf of herself and other putative class members "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal … period is not provided." Ex. A, Complaint, ¶ 67.

25. Defendants' calculation of Plaintiff's claim for meal period violations is **$1,484,384.88** ($12.12 x 1 x 122,474). The computation of the amount in controversy is based on corporate business records that prove the 1,615 putative class members worked 122,474 weeks from August 17, 2013, to August 17, 2017, that each putative class member earned an average regular rate of $12.12 per hour, and the assumption that each putative class member incurred one meal period violation

31220658_5.docx

7    Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

for every workweek.  (Switzer Decl., ¶¶ 7-8.)

26. When determining the amount placed in controversy by a plaintiff's allegations regarding a common "practice" of meal period violations like those alleged by Plaintiff in the Complaint, an estimate of one meal period violation for every week of work is both reasonable and conservative.  Ex. A, Complaint, ¶¶ 26, 57-67; *See, e.g., Campbell v. Vitran Exp., Inc.,* 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

### iii. Third Cause of Action – Unpaid Rest Period Premiums

27. In her Third Cause of Action, Plaintiff seeks to recover on behalf of herself and other putative class members "one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided."  Ex. A, Complaint, ¶ 76.

28. Defendants' calculation of Plaintiff's claim for rest break violations is **$1,484,384.88** ($12.12 x 1 x 122,474). The computation of the amount in controversy is based on corporate business records that prove the 1,615 putative class members worked 122,474 weeks from August 17, 2013, to August 17, 2017, that each putative class member earned an average regular rate of $12.12 per hour, and the assumption that each putative class member incurred one rest break violation for every workweek.  (Switzer Decl., ¶¶ 7-8.)

/ / /

/ / /

31220658_5.docx

8    Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

29.  As with meal period violations, an estimate of one rest break violation per week of work is both reasonable and conservative where, as here, the plaintiff contends that there was a common and consistent "practice" of rest break violations. Ex. A, Complaint, ¶¶ 26, 68-76; s*ee, e.g.*, *Campbell,* 471 Fed. Appx. at 649; *Mackall*, 2016 WL 4579099, at *5; *Unutoa*, 2015 WL 898512, at *3.

### iv. Fifth Cause of Action – Final Wages Not Timely Paid

30.  In her Fifth Cause of Action, Plaintiff alleges that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ … [and] Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203."  Ex. A, Complaint, ¶¶ 86, 88.

31.  Labor Code section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal.App.4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Labor Code section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

32.  The statute of limitations for waiting time penalty claims pursuant to Labor Code section 203 is three years.  Civ. Proc. Code § 338(a); *Pindeda v. Bank of Am.*, 50 Cal. 4th 1389 (2010).

33.  Here, Plaintiff's claim for untimely final wages is not premised only on the theory that Defendants failed to timely deliver final paychecks to terminated employees; rather, Plaintiff contends that Defendants owes penalties at least in part as a result of their "failure to pay Plaintiff and the other class members who are no

31220658_5.docx

9   Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

1  longer employed by Defendants' their wages, earned and unpaid ...." Ex. A,
2  Complaint, ¶ 86.  In light of the fact that Plaintiff is also seeking to recover alleged
3  unpaid overtime wages and wages allegedly owed in lieu of providing meal and rest
4  breaks, it is clear that Plaintiff's theory is that such alleged unpaid wages still have
5  not been paid to Plaintiff and putative class members.  It is therefore appropriate to
6  calculate the amount in controversy for this claim based on a 30-day penalty
7  calculated at each former employee's daily wage rate.  *See Quintana v. Claire's*
8  *Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013)
9  (finding that the defendants' waiting time penalties calculation was "supported by
10 Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the
11 claims" where the complaint alleged that the defendants "'regularly required'"
12 putative class members to work off-the-clock without compensation, and the
13 defendants estimated that each putative class member "potentially suffered at least
14 one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*,
15 No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011)
16 (finding it reasonable for the defendant to assume, in light of the allegations in the
17 complaint that members of the putative class "'routinely'" missed meal periods, that
18 "all members of the proposed class . . . would have missed a meal period as
19 described in the complaint at least once and were thus entitled to the waiting time
20 penalty").

21       34.   Defendants' calculation of Plaintiff's claim for waiting time penalties
22 for final wages not being timely paid is **$2,118,600** (30 x $11.77 x 8 x 750).  The
23 computation of the amount in controversy is based on corporate business records that
24 prove from August 17, 2014, to August 17, 2017, 750 putative class members were
25 separated from employment with Defendant Childtime Childcare, Inc., that each of
26 these 750 putative class members is qualified to receive waiting time penalties, that
27 each of the 750 putative class members earned an average regular rate of $11.77 per
28 hour, and the assumption that a "day" for the purpose of the waiting time penalty

31220658_5.docx

10   Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)

constitutes eight work hours.  (Switzer Decl., ¶ 10.)

    v. <u>Seventh Cause of Action – Non-Compliant Wage Statements</u>

35. In her Seventh Cause of Action, Plaintiff alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements … deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiff and the other class members." Ex. A, Complaint, ¶ 97.

36. Plaintiff asserts that as a result of Defendants' alleged failure to provide wage statements in compliance with California law, she and the putative class members are due "the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee."  Ex. A, Complaint, ¶ 100.  Labor Code section 226(e) provides that employees are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Cal. Lab. Code § 226(e).

37. The statute of limitations for a claim for wage statement penalties under Labor Code section 226(e) is one year.  Civ. Proc. Code § 340(a).

38. Defendants' calculation of Plaintiff's claim for non-compliant wage statements is **$1,773,800** ([914 x $50] + [17,281 x $100]).  The computation of the amount in controversy is based on corporate business records that prove Defendants issued at least 18,195 wage statements to 914 putative class members between August 17, 2016, and August 17, 2017, the assumption that there was one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period, that the penalty for the first wage statement violation for each putative class member is $50, that the penalty for

subsequent wage statement violations for each putative class member is $100, and that the aggregate penalty for each putative class member does not exceed $4,000. (Switzer Decl., ¶ 9.)  Putative class members are paid bi-weekly.  (*Id.*)

39.  Applying a minimum wage statement violation rate of one violation per pay period is appropriate, as the Complaint alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements."  Ex. A, Complaint, ¶ 97.  In *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013) the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods.  2013 WL 2950600, at *11.

    vi. <u>Ninth Cause of Action – Unreimbursed Business Expenses</u>

40.  In her Ninth Cause of Action, Plaintiff alleges that

> "Plaintiff and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants … [and] are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California."

Ex. A, Complaint, ¶¶ 109, 111.

41.  Pursuant to Labor Code section 2802, employees are entitled to reimbursement for all necessarily incurred expenses in direct consequence of the discharge of his or her duties.  The statute of limitations for such a claim is four years.  Cal. Bus. & Prof. Code § 17208.  Accordingly, the measure of potential

damages for unreimbursed business expenses claim is based on a four-year limitations period.

42. Defendants' calculation of Plaintiff's claim for unreimbursed business expenses is **$80,750** (1,615 x $50).  The computation of the amount in controversy is based on corporate business records that prove 1,615 putative class members worked from August 17, 2013, to August 17, 2017, and the assumption that each putative class member incurred $50 in unreimbursed necessary business expenses.

      vii. <u>Summary of CAFA Amount in Controversy</u>

43. As detailed above, a calculation of the amount in controversy presented by just six of Plaintiff's 10 causes of action, including unpaid overtime, unpaid meal period premiums, unpaid rest period premiums, waiting time penalties, non-compliant wage statements, and unreimbursed business expenses, totals **$9,168,497.08**, which exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

| **Damages** | **Amount** |
|---|---:|
| Unpaid Overtime | $2,226,577.32 |
| Unpaid Meal Period Premiums | $1,484,384.88 |
| Unpaid Rest Period Premiums | $1,484,384.88 |
| Final Wages Not Timely Paid | $2,118,600.00 |
| Non-Compliant Wage Statements | $1,773,800.00 |
| Unreimbursed Business Expenses | $80,750.00 |
| **Total** | **$9,168,497.08** |

### III. <u>THE REMOVAL PROCEDURAL REQUIREMENTS ARE SATISFIED</u>

44. **Removal Is Timely.**  Pursuant to 28 U.S.C. § 1446(b), Defendants timely filed this Notice of Removal within 30 days of service of Plaintiff's Complaint.

45. **Removal to This Court Is Proper.**  Pursuant to 28 U.S.C. §1446(a), removal to this court is proper, as Plaintiff's Complaint was filed in Orange County Superior Court, which is located within the Central District of California. Therefore, without prejudice to Defendants' right to move to transfer venue, for purposes of removal, venue is proper in this court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

46. **Pleadings and Process.**  Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Defendants are attached to this Notice of Removal as Exhibits A and B.

47. **Notice to All Parties and the State Court.**  Pursuant to 28 U.S.C. § 1446(a) and (d), and concurrent with the filing of this Notice of Removal, Defendants gave written notice to Plaintiff's counsel of record, and will file a copy of this Notice of Removal with the Clerk of the Orange County Superior Court.

48. **Corporate Disclosure Statement and Certificate of Interested Parties.**  Pursuant to Federal Rule of Civil Procedure 7.1, and Local Rule 7.1-1, and concurrent with the filing of this Notice of Removal, Defendants have filed their Corporate Disclosure Statement and Certificate of Interested Parties.

## IV.  CONCLUSION

49. This Court, therefore, has jurisdiction over Plaintiff's claims by virtue of 28 U.S.C. §§ 1332(d), and this action is properly removable to federal court pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

50. In the event this Court questions the propriety of this Notice of Removal, Defendants request that it issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal.

DATED: September 20, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Ted A. Gehring
Evan R. Moses
Ted A. Gehring
Ryan P. Patterson

Attorneys for Defendants
CHILDTIME CHILDCARE, INC. and LEARNING CARE GROUP, INC.
(incorrectly named as "LEARNING CARE GROUP")

31220658_5.docx

15   Case No. _____
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION
PURSUANT TO 28 U.S.C. § 1332(D) (CLASS ACTION FAIRNESS ACT)