UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER DENYING MOTION TO REMAND**

This matter is appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b). The Court VACATES the November 13, 2017 hearing on this motion.

Plaintiff Karen Morgan filed a putative class action wage and hour lawsuit against Defendants Childtime Childcare, Inc., Learning Care Group, and certain unknown defendants referred to as "Does," in the Orange County Superior Court on August 17, 2017. About a month later, Defendants removed Plaintiff's case to federal court. (Dkt. No. 1.) Plaintiff now moves to remand to state court.

The Court DENIES Plaintiff's motion to remand. (Dkt. No. 12.)

**1. BRIEF BACKGROUND**

Plaintiff alleges that she worked for Defendants as an hourly-paid, non-exempt employee from March 2013 to January 2016. In August 2017, Plaintiff filed a putative wage and hour class action. Plaintiff's complaint asserts ten different claims for relief: (1) unpaid overtime in violation of California Labor Code §§ 510 and 1198; (2) unpaid meal periods in violation of California Labor Code §§ 226.7 and 512(a); (3) unpaid rest periods in violation of California Labor Code § 226.7; (4) unpaid minimum wages in violation of California Labor Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

§§ 1194, 1197, and 1197.1; (5) untimely final wage payments in violation of California Labor Code §§ 201 and 202; (6) untimely wage payments in violation of California Labor Code § 204; (7) non-compliant wage statements in violation of California Labor Code § 226(a); (8) failure to keep appropriate payroll records in violation of California Labor Code § 1174(d); (9) unreimbursed business expenses in violation of California Labor Code §§ 2800 and 2802; and (10) claims under California's Unfair Competition Law, California Business & Professions Code § 17200 et seq. (Compl., Dkt. No. 1-1.) Plaintiff's complaint doesn't ask for a specific amount of damages.

Plaintiff says Defendants haven't sufficiently established the minimum amount in controversy for federal jurisdiction.

## 2. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," and they possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Constitution provides, in Article III, § 2, that "[t]he judicial Power [of the United States] shall extend . . . to all Cases . . . arising under this Constitution, the Laws of the United States . . . [or] between Citizens of different States."

With the Class Action Fairness Act of 2005 (commonly called "CAFA" for short), Congress authorized district courts to exercise jurisdiction over class actions where there are at least 100 class members, where any plaintiff is diverse in citizenship from any defendant, and where the amount in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d). A "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). But when a plaintiff does challenge a defendant's amount in controversy estimates, the defendant bears the burden of establishing that the amount in controversy requirement is met by a preponderance of the evidence. *Id.* at 553–54; *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

## 3. ANALYSIS

The parties dispute whether the $5 million CAFA threshold has been met in this case. Plaintiff's arguments on this issue fall into two main categories: those concerning the nature of Defendants' amount in controversy evidence and those concerning the violation rates Defendants used in determining the amount in controversy.

### 3.1 Nature of Defendants' Amount in Controversy Evidence

Defendants based their notice of removal, in large part, on a declaration from Carol Switzer, director of Defendants' payroll and human resources systems. (*See* Notice of Removal, Dkt. No. 1.) Switzer's declaration includes information like how many putative class members worked for Defendants during the relevant time period, how many wage statements putative class members received, and how much the putative class members were paid on average. (Decl. of Carol Switzer ("Switzer Decl."), Dkt. No. 4 at 2–3.) Switzer says she was able to provide this information based on her "review of [Defendants'] records." (*Id.* at 2.) In a supplemental declaration, Switzer says she "reviewed records from [Defendants'] PeopleSoft human resources and payroll system," which contains "information such as the number of workweeks, pay periods worked, and rates of pay" for Defendants' employees. (Switzer Supp. Decl., Dkt. No. 14-1 at 1.)

Plaintiff argues that Switzer's declaration is not competent evidence to prove the amount in controversy. Boiled down to their essence, Plaintiff's arguments question whether Defendants can rely on Switzer's declaration even though it isn't accompanied by the specific records Switzer used to prepare her declaration. (*See* Mot., Dkt. No. 12 at 5–7.) Plaintiff argues that "Defendants present their Notice of Removal and supporting Declaration of Carol Switzer without permitting the Court or Plaintiff to assess whether such figures are rooted in fact" and argues that "Defendants have provided no supporting evidence." (Mot., Dkt. No. 12 at 6–7.)

In supporting removal, "parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

1197 (9th Cir. 2015) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A declarant may "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Here, Switzer's declaration concerns facts and numbers that are part of her regular employment and that she pulled from Defendants' business records. This is enough to show the requisite personal knowledge and competency. *See* Fed. R. Civ. P. 56(c)(4). And Plaintiff doesn't say why the facts in Switzer's declaration—the employment numbers—might be inadmissible.

So concerning purportedly defective nature of Switzer's declaration, the Court isn't convinced by Plaintiff's arguments.

### 3.2  Defendants' Assumed Violation Rates

Plaintiff also has a more granular objection to Switzer's declaration and Defendants' amount in controversy calculations. Plaintiff argues that they both rely on violation rates that are too high.

Plaintiff's complaint doesn't include specific numbers about how often Defendants committed the alleged wage and hour violations. Instead, the complaint alleges generally that "Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees." (Compl., Dkt. No. 1-1 at 7.) Plaintiff's complaint doesn't include any other language limiting the frequency with which the individual violations occurred. Most of the allegations follow a similar pattern. Like Plaintiff's overtime claim, which reads: "At all material times set forth herein, Defendants failed to pay overtime wages to Plaintiff and other class members for all hours worked. Plaintiff and other class members were required to work more than eight (8) hours per day and/or (40) hours per week without overtime compensation." (*Id.* at 9.) Based on several of Plaintiff's claims, Defendants say $9,168,497.08 million is at stake in this case. (Notice of Removal, Dkt. No. 1 at 13.)

Defendants trying to keep wage and hour disputes in federal court face competing concerns. On the one hand, they want to show that enough of their employees might be affected by a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

plaintiff's allegations to satisfy the amount in controversy requirement. On the other hand, they don't want to prove a plaintiff's allegations as true. To strike a balance between these concerns, courts have "not required [a defendant] to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucchi Am., Inc.*, No. 14-7468-SVW-JPR, 2015 WL 9335, at *5 (C.D. Cal. Jan. 7, 2015). But when a "defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [under CAFA], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

### 3.2.1 Unpaid Overtime Claim

Defendants say that Plaintiff's unpaid overtime claim alone places $2,226,577.32 in controversy. Defendants say this number is based on the average hourly rate, $12.12 per hour, of the 1,615 putative class members. (Notice of Removal, Dkt. No. 1 at 6.) Defendants say that these 1,615 employees collectively worked a total of 122,474 weeks during the relevant time period. (*Id.* at 7.) So, multiplying 122,474 workweeks by $18.18 (time-and-a-half for the average $12.12 per hour) results in $2,226,577.32.

Plaintiff attacks a key assumption underlying this calculation. Specifically, she argues that it's unreasonable for Defendants to assume that all 1,615 employees worked one hour of unpaid overtime per week. (Mot., Dkt. No. 12 at 7–9.) The crux of this argument rests on whether Plaintiff's allegation that Defendants "uniformly and systematically" violated the relevant wage and hour statutes justifies using a one-time-a-week violation rate.

Courts "in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language— and where plaintiff offers no evidence rebutting this violation rate." *Franke v. Anderson Merch. LLC*, No. 17-3241-DSF-AFM, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) (citations omitted). For example, in *Graham v. IFCO Systems North America, Inc.* the court lowered a defendant's proposed overtime violation rate from five violations per week to one. No. 17-0074-SJO-SP, 2017 WL 1243498, at *5–6 (C.D. Cal. Mar. 3, 2017). The *Grahm* noted that "one hour of overtime per putative class member per week is a reasonable assumption" given the plaintiff's allegation that the defendant engaged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

in "a uniform policy and systematic scheme of wage abuse." *Id.* at *4–5.

Here, Plaintiff's complaint is similarly broad. It doesn't specify how often the alleged violations occurred. It doesn't say that they happened "frequently," or "sometimes," or "often." Instead, as to frequency, Plaintiff alleges only that the violations were part of a "uniform policy and systematic scheme of wage abuse" without further qualification. (*See* Compl., Dkt. No. 1-1 at 7.) So, considering the weight of authority supporting Defendants' assumed violation rate under these circumstances, the Court sees no reason to require Defendants to use a lower rate.

### 3.2.2  Unpaid Meal & Rest Break Claims

The same goes for Plaintiff's arguments concerning the violation rate Defendants used in their unpaid meal and rest break calculations. Plaintiff's complaint pleaded that "Defendants failed to provide the requisite uninterrupted meal and rest periods." (Compl., Dkt. No. 1-1 at 9.) Plaintiff pleaded these as independent claims, one for meal breaks and one for rest breaks. (*Id.* at 12–14.)

Defendants say that Plaintiff's meal period claim and rest period claim each place $1,484,384.88 at stake. (Notice of Removal, Dkt. No. 1 at 7–9.) The math is identical for both claims. Defendants multiply the average hourly wage ($12.12) by the total number of weeks cumulatively worked by the putative class members (122,474). (*Id.*) Defendants make a similar assumption to the one they made in their overtime calculation: one violation per claim per week per employee. (*Id.*)

Again, Plaintiff's complaint includes little limitation on how often those violations occurred, just that there was a "uniform and systematic" scheme of violating employees' right to meal and rest periods. (*Id.* at 7.) So, considering this pervasiveness and the daily requirement of meal and rest breaks, Defendants weren't unreasonable in assuming one meal period and one rest period violation per week per employee. *See Dawson v. Hitco Carbon Composites, Inc.*, No. 16-7337-PSG-FFM, 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (approving assumed meal and rest period violation rate of half of all days worked); *Oda*, 2015 WL 9335 at *5 (same holding).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDCARE, INC. ET AL. | | |

### 3.2.3 Waiting Time Claim

Plaintiff also contests Defendants' calculation of what's at stake for Plaintiff's "waiting time" claim. On this claim, Plaintiff alleges that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Compl., Dkt. No. 1, at 20.) According to the complaint, the "California Labor Code . . . provides that if an employer willfully fails to pay wages owed . . . then the wages of the employee shall continue as a penalty from the due date thereof at the same rate . . . but the wages shall not continue for more than thirty (30) days." (*Id.* at 16.)

Defendants say this claim places $2,118,600 in controversy. (Notice of Removal, Dkt. No. 1 at 9–10.) They say that 750 class members stopped working for Defendants during the relevant time period, that the average hourly wage of those class members was $11.77, and that those class members worked 8 hours per day. (*Id.* at 10–11.) Defendants say that all 750 class members covered by this claim would be entitled to the full 30-day wage penalty if Plaintiff's claims are all true. (*Id.* at 9–10.) In other words, if Defendants failed to pay the putative class members overtime or meal and rest premiums, the class members are still owed earned wages, now well beyond the 30-day statutory penalty period.

Plaintiff hasn't convinced the Court that this calculation is flawed. Instead, Defendants' maximum 30-day penalty "estimates are reasonable based on the allegations that Defendant[s] failed to pay Plaintiff and class members their wages after leaving Defendant's employ and that Defendant has still not paid Plaintiff and class members all wages they were entitled to." *See Long v. Destination Maternity Corp.*, No. 15-2836-WQH-RBB, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016); *see also Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (holding that 30-day violation penalty for each class member was not unreasonable under similar circumstances).

### 3.2.4 Wage Statement Penalties

Plaintiff's arguments concerning Defendants' wage statement claim also aren't convincing. Defendants say that claim puts $1,773,800 in controversy. (Notice of Removal, Dkt. No. 1 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

11.) They say 914 putative class members received 18,195 pay statements during the relevant time period. (Notice of Removal, Dkt. No. 1 at 11.) Defendants calculate the amount in controversy by applying a $50 statutory penalty for the first wage statement violation per class member and a $100 penalty for each improper statement after that. (*Id.* at 11–12.)

Plaintiff says it's unreasonable for Defendants to assume that each and every pay statement issued during the relevant time period was improper. (Mot., Dkt. No. 14–15.) But given "the pervasiveness of the policies that are the subject of [Plaintiff's other] causes of action . . . it is reasonable to assume that each putative class member suffered at least one [wage and hour] violation during any given pay period, resulting in an inaccurate pay statement." *Altamirano v. Shaw Indus., Inc.*, No. 13-039-EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013).

### 3.2.5  Unreimbursed Business Expenses

Finally, Defendants argue that Plaintiff's unreimbursed business expenses puts $80,750 in controversy. Defendants get there by multiplying the full number of class members (1,615) by $50 per class member. Defendants assert that this number translates to $0.65 of unreimbursed expenses per class member per workweek. (Opp'n, Dkt. No. 14 at 23.) Defendants' only justifications for this number is that it's "an extremely low violation rate" because Plaintiff will assert that class employees paid unreimbursed expenses for "cellphone usage, uniforms, and tools." (*Id.* 23–24.) But, high or low, the violation rate must be rooted in fact, and it's not clear why Defendant chose $50 as the violation rate for this claim. *See LaCross*, 775 F.3d at 1202 (holding that a defendant's "chain of reasoning and its underlying assumptions must be reasonable" in calculating the amount in controversy). So the Court will not consider the $80,750 in assessing the amount in controversy.

### 3.3  Total Amount in Controversy

Even without the $80,750 for the unreimbursed business expenses claim, Defendants have shown that far more than $5 million is at stake in this case. *See* 28 U.S.C. § 1332(d)(2). Combining the appropriate numbers discussed earlier puts the amount in controversy at over $9 million. Accordingly, Defendants have sufficiently established the requisite amount in controversy under CAFA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-01641 AG (KESx) | Date | November 10, 2017 |
|---|---|---|---|
| Title | KAREN MORGAN v. CHILDTIME CHILDARCARE, INC. ET AL. | | |

**4. DISPOSITION**

The Court DENIES Plaintiff's motion to remand. (Dkt. No. 12.)

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |